UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

MAY - 1 2006

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-04-015 |
| v. | § | |
| | § | |
| | § | |
| $155,895 UNITED STATES CURRENCY | § | |
| Defendant. | | |

## UNITED STATES' MOTION FOR CONTINUANCE, AND MOTION FOR ORDER COMPELLING DISCOVERY

The United States files this Motion for Continuance and for an order compelling discovery under Fed. R.Civ.P. 26(a) and 37. The grounds for this motion are as follows:

### I. Background Facts

The United States brought this forfeiture action against $155,895.00 United States Currency (hereafter referred to as Defendant Currency) under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of money that is furnished, or intended to be furnished, in exchange for a controlled substance, or is used to facilitate a violation of Title II of the federal Controlled Substances Act. (DE #1).[1] The United States has alleged that on August 4, 2003, law enforcement officers

---

[1] "DE" refers to the docket entry in Civil Docket for Civil Action Number B-04-015. The number that follows is the docket entry number.

recovered $155,895.00 from Omar Martinez after he deboarded a bus that arrived in Harlingen, Texas, from a northern destination. Officers discovered seven vacuum-sealed packages of United States currency hidden within the Karaoke machine and three vacuum-sealed packages of United States currency hidden within the DVD player. A combination of factors provided police officers with probable cause to believe that the defendant currency was drug proceeds, including Martinez's false, inconsistent and evasive responses regarding his knowledge of the money, the amount of money, his ownership of the money, and the source of the money (DE # 1).

Initially, on March 24, 2004, Omar Martinez, through his attorney Oscar De La Fuente, filed a Statement of Right of Interest and Statement of Persons representing that he is the only bona fide owner of the seized Defendant Currency. He also filed a document entitled "Entities Known to Have a Financial Interest in this Litigation," representing that "all persons known to have an interest in this case have been identified and filed a response with this Court;" and that he had "no knowledge of any additional parties with a financial interest in this litigation" (DE # 5-6). On December 28, 2004, Martinez filed a First Amended Rule C(6) Verified Statement of Right of Interest and a new Statement of Persons and Entities Known to Have a Financial Interest in this Litigation, representing,

2

contrary to his initial pleading, that he is *a* bona fide owner of the seized currency, and that his siblings Esteban Martinez, Jr., and Julissa Trevino, and father Esteban Martinez, Sr., also have a financial interest in this litigation (DE # 18-19).

The United States subsequently served interrogatories on Omar Martinez, requesting that he describe the source of his ownership of any part of Defendant Currency, including the identities of any persons or entities from whom he received it, dates of receipt, the reason the Defendant Currency was given to him, and whether he received the Defendant Currency in the form of a check, cash or otherwise. If any portion was derived from cash, the United States requested Omar Martinez specify the source of the cash and identify any documents that relate to the source of the cash and who has control over the documents  If any portion of Defendant Currency was derived from a check, the United States requested that Martinez specify the financial institution where he negotiated the check and any documents that relate to the negotiation and disposition of said check .

Omar Martinez answered that he had a claim to $177,600.00 (rather than $155,895.00), and that Esteban Martinez Sr. gave him $15,000 in cash between November 2002 and December 2002 in Mercedes, Texas; Julissa Trevino gave him $20,000 in December 2002 in South Bay, Florida; and Esteban Martinez Jr.

gave him $76,300 in Bridgeton, New Jersey, on about July 31, 2003. He did not explain from where the remainder of the Defendant Currency was derived. He also did not specify the source of the cash received from the above three individuals. (Omar Martinez's Response to Interrogatory Nos. 2 and 3 attached as Exhibit "A").

If Omar Martinez claimed that any part of the Defendant Currency was withdrawn from a financial institution, the United States requested in Interrogatory No. 5, that Omar Martinez identify the financial institution, account number and date the Defendant Currency was withdrawn from the account. Although Omar Martinez provided information concerning where he held bank accounts over the past five years, he did not provide any information in response to the above question (Response to Interrogatory No. 5 attached as Exhibit "C").

On July 1, 2005, the court entered a Scheduling Order setting the deadline for completing discovery by April 7, 2006; the Joint Pretrial Order is due by May 12, 2006, and the Final Pretrial Conference and Jury Selection is scheduled for June 2006 (DE # 31). On July 19, 2005, Claimants Esteban Martinez Sr., Esteban Martinez Jr., and Julissa Trevino filed a Statement of Right of Interest, through their attorney Paul Fourt Jr., stating that they also are bona fide owners of the Defendant Currency (DE # 35).

The United States subsequently served Omar Martinez with a First Request for Production of Documents and a Notice of Deposition for April 6, 2006. Included in the request were the following items: (1) all documentation relating to his contention he borrowed any part of Defendant Currency from his father or siblings; (2) all documentation supporting his contention he owns a portion of Defendant Currency, including any records relating to his ownership and the source of Defendant Currency (i.e. all bank records reflecting the deposit, receipt, transfer, negotiation of the source of Defendant Currency, and any subsequent negotiation, withdrawal, disbursement, or distribution; and (3) copies of bank records for the time frame between August 1, 2000 through August 2003. If Omar Martinez did not have copies of the bank records, the government requested him to execute an attached authorization form and return it within three days (United States' First Request for Production of Documents attached as Exhibit "D").

On March 2, 2005, the United States served claimants Esteban Martinez Sr., Esteban Martinez Jr. and Julissa Trevino, with Notices of Deposition for April 5, 2006. The United States requested the claimants bring to the deposition certain evidence in support of their claim or defense of this forfeiture action, including: (1) Complete copies of United States Individual Income Tax Returns of the claimant and their household for tax years 2000 through 2003 and all

5

accompanying forms and attachments. If they were unable to produce complete copies, the United States provided them with forms authorizing IRS to produce the tax information to the undersigned. (2) Complete copies of their bank records for the period between January 2002 through August 31, 2003. If they did not have some or all of the documents, the United States requested they identify the financial institution and account number; and the United States attached a form for them to execute authorizing their banks to produce such documents to the United States. (3) Records relating to their living expenses and any loans or notes for the period between January 2002 through August 31, 2003. (4) All documentation supporting their contention that they own any part of Defendant Currency, including bank records, reflecting their ownership and the source of the Defendant Currency, including deposits, withdrawals, and so forth (Notice of deposition is attached as Exhibit "E"--since all three notices contain the same information, the undersigned attached only one as a reference).

On April 5, the United States deposed claimants Esteban Martinez Jr., Esteban Martinez Sr. and Julissa Trevino. Esteban Martinez Jr. produced two items to support his contention he owns part of the defendant currency: a record showing he received a check for $129,454.74 from a 2000 legal settlement on

August 18, 2000,[2] and part of a bank record entitled "Inquiry: Balance and rate information" and "Transactions" relating to a $100,000.00 certificate of deposit in the name of Juanita and Esteban Martinez opened on February 8, 2001 and withdrawn on May 8, 2001 (attached as exhibit "F "). Esteban Martinez Jr. provided no records showing that the $129,454.74 check was deposited in a bank, that the funds to purchase the certificate of deposit came from that amount, or the source or disposition of the $100,000 certificate of deposit. When asked if these were the only records that supported Esteban Martinez Jr.'s claim, Mr. Fourt stated that it may or may not be all the documents. If anything else came up he would supplement the production. The same applied to the bank records. When the undersigned asked Esteban Martinez Jr. whether he brought complete copies of his bank records, Mr. Fourt replied that the above records were all he had, and that if the undersigned wanted more, she would have to get them. Esteban Martinez Jr. further failed to bring any records or information relating to his living expenses from January 2002 through August 2003 as requested in the Notice of Deposition. He testified he had such information at home and agreed to mail the

---

[2] The claimants and other family members brought a wrongful death action in connection with the death of Manuela Martinez, the wife of claimant Esteban Martinez Sr. and mother of claimants Omar Martinez, Esteban Martinez Jr., and Julissa Trevino. On August 18, 2000, a legal settlement was reached and the claimants each received $129,454.74 as their share of the settlement.

information to Mr. Fourt as soon as he returned home (Deposition excerpt of Esteban Martinez Jr. is attached as Exhibit "G").

With regard to the legal settlement check, Esteban Martinez Jr. testified that he deposited it into a bank in August 2000, but he could not recall the name of the bank. He later recalled it was the Bank of Belle Glade. Mr. Fourt interjected that a record was produced showing the money was deposited into an account at Bank of Belle Glade, and the record showed the account balance and the day it was deposited (*see* Exhibit "G"). However, the only two records that Esteban Martinez Jr. produced are referenced above. The records do not reflect the deposit of the settlement check in an account or an account balance. The only record he produced related to a certificate of deposit opened several months later (Exhibit "G").

Esteban Martinez Jr. testified that he later withdrew his part of the Defendant Currency from his bank and kept it at his house. However, he did not know the date or amount of withdrawal. He said his attorney had the papers. Mr. Fourt again pointed to the record relating to a certificate of deposit, and added he would sign a release for production of bank records so the government could get complete records from the bank. The undersigned asked Esteban Martinez Jr. whether he opened a savings account or a certificate of deposit with the settlement

check. He did not know. He testified it was his wife who conducted the business and he was unsure how she deposited the money (Exhibit "G").

When Esteban Martinez Sr. appeared for his deposition, the undersigned asked whether he brought any records relating to his ownership of part of the Defendant Currency. Mr. Fourt stated the records would consist of the legal settlement checks issued to the family members in August 2000, and bank records--which Mr. Fourt acknowledged that Esteban Martinez Sr. did not bring with him. He added that the government should be able to obtain the bank records with an authorization form. Esteban Martinez Sr. also failed to bring any records regarding his living expenses; although he testified he had such records at home and could provide them (Deposition excerpt attached as Exhibit "H ").

Esteban Martinez Sr. testified that $15,000 of the Defendant Currency came from the legal settlement he received ($129,454.74). He deposited the settlement check at Texas State Bank in his only account at Texas State Bank He could not recall when he deposited the settlement check. Nor could he recall when he withdrew the above $15,000 from the account. At some point, he withdrew a sum of money from his account and kept it in his house. He later loaned Omar Martinez $15,000 from that amount in November or December 2002. He also testified about withdrawing money from the bank to make large purchases

9

between 2002 and 2004 (Exhibit "H").

Julissa Trevino only brought copies of W-2s to her deposition. She failed to provide copies of tax returns for the requested years. She testified she loaned Omar Martinez $20,000 out of the legal settlement check ($129,454.74) she received. She used a certain amount of the legal settlement to purchase four certificates of deposit, each for $10,000; and a fifth certificate of deposit in an amount she could not recall. She subsequently withdrew the four certificates of deposit and kept the money in her house. She later lent Omar Martinez $20,000 from the amount she kept inside her house . With the remaining amount from the settlement, she paid off her house, and purchased five acres of land and a truck. She could not recall any details, but stated she would provide the information concerning the transactions to the undersigned attorney after consulting with her husband (Deposition excerpt attached as Exhibit "I").

The undersigned later ascertained that Omar Martinez produced "Time Deposit Withdrawal Confirmation" forms at First Union Bank reflecting various amounts (totalling about $46,700) were withdrawn from 5 different certificates of deposits in the name of Julisa and Lauro Trevino, or their children, between 9/28/2000 and 11/13/00--in response to the request for all records supporting the contention he borrowed any part of Defendant Currency. Again, the records do not

show the deposit of the settlement check, or that the CDs were purchased with funds from the settlement check (Records are attached as Exhibit "J").

Omar Martinez testified at his deposition on April 6, 2006, that $66,300, the amount he claims is his part of the Defendant Currency, was derived from $129,434 he received from the legal settlement and deposited into an account at Texas State Bank. He could not recall which account. He has provided no further records of how his alleged part of Defendant Currency came from the above deposited check (Deposition excerpt attached as Exhibit "K").

Shortly before his deposition on April 6, 2006, Omar Martinez produced his response to the United States' request for production of documents. In response to the request for all records showing Omar Martinez owns a portion of Defendant Currency, he produced a copy of the 8/18/00 settlement agreement arising from the wrongful death action, a list of the distribution of the settlement to plaintiffs, and a record reflecting Omar Martinez received a settlement check for $129,454.74 on 8/18/00 (Records are attached as Exhibit "M"). He provided no records showing the deposit of the above amount, or what occurred with the funds after August 2000. In an email to Mr. DeLaFuente on April 10, 2006, the undersigned requested that Omar Martinez identify the bank transactions, and obtain the corresponding bank records, supporting his claim that his part of

Defendant Currency came from the settlement check (email is attached as Exhibit "N"). At depositions of government witnesses on April 13, 2006, Mr. DeLaFuente said he was working on obtaining the requested information.

In response to the request to produce records showing he borrowed part of the Defendant Currency, Omar Martinez submitted real estate documents reflecting his father Esteban Martinez Sr. purchased and resold Lot 1, Capisallo Terrace Subdivision, Unit No. 1001, in May 2001 and June 2002 (Records are attached as Exhibit "L"). However, Esteban Martinez Sr. testified, more than once at depostions, that he did not purchase any real property. Mr. Fourt later clarified that Esteban Martinez Sr. purchased real estate for $17,000 and later resold it for $28,000. In any event, Esteban Martinez Sr. testified the amount he lent to Omar Martinez came from part of his legal settlement that he deposited and withdrew from his bank. He certainly did not link the purchase of the above real estate to any alleged loan to Omar Martinez (Exhibit "H").

To date, the United States has received no supplemental production. While the claimants executed the forms authorizing the United States to obtain their tax and bank records, the undersigned is still awaiting the receipt of authorizations by the spouses of Esteban Martinez Jr. and Julissa Trevino. Esteban Martinez Jr. testified there is a present account at Bank of America under his wife's name

only. The United States has issued subpoenas to obtain the claimants' bank records. The banks have a deadline of May 12, 2006, for producing the claimants' relevant bank records. The United States has already obtained, through subpoenas, most of Omar Martinez's bank records based on financial information he disclosed in his Interrogatories.

Following depositions on April 6, 2006, the undersigned attorney provided both attorneys with a list of items that were not produced by their claimants pursuant to the requests in the notices of deposition. The outstanding discovery items were later outlined in emails between the attorneys (Emails are attached as Exhibit "O"). They indicated they would promptly obtain the records. They also both acknowledged in a meeting on April 6 that they had not produced all the items by the court's deadline on April 7. While the undersigned agreed to move forward to subpoena the necessary bank and tax records with the newly-executed authorizations, it did so, with the understanding that both sides would agree to move the court for a new scheduling order and trial date. In fact, Mr. Fourt and Mr. DeLa Fuente suggested the parties request a meeting with the court upon the undersigned attorney's return to Brownsville on April 13 to attend depositions of government witnesses.

After the undersigned returned from the April 13 trip, she was notified by

email that Mr. Fourt and Mr. DeLaFuente had changed their mind regarding the motion for continuance. They believed it was in their clients' best interest to proceed under the present scheduling order and June trial date. Mr. Fourt asked the undersigned to let him know whether she would like to extend any discovery deadlines (Email attached as Exhibit "P").

In a reply email, the undersigned reminded Mr. Fourt and Mr. DeLaFuente that there are outstanding requests for production of evidence. In light of their email, and no supplemental discovery production, the undersigned outlined the reasons she believed the claimants were not acting in good faith. She stated that providing witness lists, exhibits, etc. before the completion of discovery is premature. She asked for Mr. DeLaFuente and Mr. Fourt to let her know whether claimants could complete their discovery obligations by April 24, 2006, in which case, she could be ready to proceed to trial in June 2006 (email attached as Exhibit "Q"). Despite the court's discovery deadline of April 7, Mr. Fourt responded that he did not understand the "artificial" deadline of April 24. Unless the parties could agree to resolve the matter by a reasonable offer by the government, then he would push for a June trial setting (email and response email attached as Exhibit "R").

On April 24, 2006, the undersigned attorney did not receive any

supplemental production of the requested discovery. Mr. Fourt simply sent an email requesting the undersigned to forward yet another form authorizing disclosure of bank and tax records for the claimants' spouses to sign. The undersigned replied that the forms were provided as a courtesy several weeks beforehand in the notices of deposition. Counsel could have copied those forms, drafted his own forms, or requested his clients and their spouses to contact their banks. Also, the government had previously provided tax authorization forms containing the spouses' information and Mr. Fourt had assured the forms would be executed and returned right away (Emails attached as Exhibit "S").

Mr. Fourt replied that he was doing the government a favor since he did not have authority over the spouses. He failed to explain why his clients failed to provide complete copies of their own tax returns and bank records on the deposition date of April 5 (email attached as "T ").

II.

Request for Continuance, or,
Alternatively, Order Compelling Immediate Completion of Discovery

The undersigned certifies that she has in good faith conferred with counsel for claimants in an effort to obtain the requested discovery without court action. Although counsel assured the undersigned that the requested discovery would

promptly be provided, the undersigned has still not received supplemental discovery. With regard to the bank records, the claimants provided incomplete, isolated, and unsupported records to support their claims in this action. They had the obligation to provide complete records but did not do so. Rather, they have placed the burden on the United States to timely obtain the records, while at the same time, opposing additional time for the United States to do so. *See* Fed.R.Civ.P. 37(2)(3)(Evasive or incomplete disclosure, answer or response is treated as a failure to disclose, answer or respond).

Although the undersigned agreed to work with counsel in obtaining the bank records through their authorizations, such an agreement was conditional that any additional time would not work a hardship on the United States' ability to prepare for trial. The Claimants' agreed to jointly move with the United States to obtain a new scheduling order and trial date to afford the United States enough time to obtain necessary and relevant discovery relating to their claims that the Defendant Currency is derived from legitimate sources. The claimants have now reversed their agreement with the undersigned by insisting upon a trial date of June 1, 2006, without completing their discovery obligations.

The requested discovery was due on April 7, 2006. The information is crucial to preparing for pre-trial and trial matters. Because discovery has not been

completed by the court's deadline, the government has been prejudiced.

III.

Conclusion

The United States respectfully requests a continuance of the trial date, as well as, a new scheduling order setting forth new deadlines for filing non-dispositive motions and the Joint Pretrial Order -- to provide the United States sufficient time to obtain complete discovery that is necessary to prepare for pre-trial and trial matters.

Should the Court deny this motion for continuance, the United States requests the Court enter an order either striking the Claimant's Statement of Right of Interest in this action; or an order precluding the Claimants from presenting any evidence that supports or relates to their claim that their alleged interest in the Defendant Currency was derived from lawful sources. *See* Fed.R.Civ. P. 37(b)(2)(B) and (C).

The United States further moves the Court for an order compelling the Claimants to produce all discovery that is still outstanding by May 5, 2006.

III.

Statement of Conference with Opposing Counsel

The United States has conferred with counsel for Claimants, and they

oppose the United States' Motion for Contuance and Motion for an Order Compelling Discovery.

        Respectfully submitted,

        DONALD J. DeGABRIELLE, JR.
        United States Attorney

        _____
        KATHERINE L. HADEN
        Attorney-in-Charge
        Texas Bar No. 08677500
        Assistant U.S. Attorney
        910 Travis, Suite 1500
        P.O. Box 61129
        Houston, Texas 77208
        Phone: 713-567-9365
        Facsimile: 713-718-3404

## CERTIFICATE OF SERVICE

I, Katherine L. Haden, Assistant United States Attorney, do hereby certify that a true and correct copy of the above and foregoing has been served on counsel of record via both Certified Mail, Return Receipt Requested, and facsimile, on April 28, 2006, addressed to:

Attorneys for Claimants

Mr. Oscar De La Fuente, Jr.
Rio Grande Law Center
501 E. Tyler
Harlingen, Texas 78550
Telephone: (956) 425-5297
Facsimile: (956) 425-1844

Mr. Paul Fourt
1000 E. Van Buren
Brownsville, Texas 78550
Telephone: (965) 574-0109
Facsimile: (956) 574-0227

Katherine L. Haden
Assistant United States Attorney