United States District Court
Southern District of Texas
FILED

JUL 2 7 2006

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | |
| | § | |
| $155,895 UNITED STATES CURRENCY | § | Civil Action No. B-04-015 |
| | § | |
| | § | |
| **Defendant.** | § | |

## CLAIMANTS' MOTION FOR ORDER COMPELLING DISCOVERY AND/OR CLAIMANTS' MOTION TO EXCLUDE EVIDENCE PURSUANT TO F.R.C.P. 37

Claimants, Esteban Martinez Jr., Esteban Martinez, Sr., and Julissa Trevino ("Claimants") file this Motion for Order Compelling Discovery, or alternatively, a Motion to Exclude Evidence pursuant to F.R.C.P. 37 and would show the court the following:

### I.    BACKGROUND

Plaintiff has alleged in its Complaint for Forfeiture that the United States Currency (hereinafter "Cash") was tainted with or somehow covered with an unknown illegal narcotic. (Exhibit A).  Plaintiff further alleges in its response to interrogatory number 7, that because the Cash was tainted with illegal narcotic residue, Omar Martinez was engaged in narcotic trafficking. (Exhibit B).

The so called evidence the government uses to *"establish this fact"* is oral testimony from Harlingen Police Officer Ramiro Martinez.  Officer Martinez is the K-9 handler who used a dog to "smell" the money.  And low and behold, Officer Martinez claims the K-9 might have "alerted to the presence of narcotics on the money". (Exhibit C).

It is important to note that no narcotics were found on the person, clothes or luggage of

Omar Martinez. The Governments entire case rests with the dog handlers "guess" (Exhibit F) about what the dog "alerted" to with regard to the Cash. Plaintiff claims the Cash was physical evidence of narcotics which proves Omar Martinez was in direct contact with the unknown illegal substance.

On April 6, 2006, Claimants served requests for production on Plaintiff with the a single request for production:

1.   **The $155,895 in United States Currency seized in this matter for the purpose of scientific inspection.** (Exhibit D).

On April 19, 2006 Plaintiff served its response as follows:

**ANSWER: As already disclosed, The United States does not have the $155,895.00 U.S. Currency in its control or possession. The defendant currency was exchanged for a cashier's check made payable to the U.S. Marshal in the amount of $155,895.00 at Texas State Bank in August 2003.** (Exhibit E).

Therefore, the law enforcement officers and Plaintiff have done the following:

1.   Seized physical evidence from Omar Martinez.

2.   Instructed a K-9 to smell the physical evidence for illegal narcotic residue.

3.   Alleged that the physical evidence did in fact have illegal narcotic residue based only on the dog sniff.

4.   Allege that because the physical evidence was tainted with drugs, that Omar Martinez was a drug dealer.

5.   No follow up residue tests were conducted to confirm or discredit the dog sniff.

6.   And finally, the physical evidence was destroyed so no further testing could be conducted.

## ARGUMENTS AND AUTHORITY

Pursuant to F.R.C.P. 34, Claimants made a timely request to inspect the physical evidence Plaintiff uses to claim the money was tainted with narcotics. Claimants are entitled to inspect any physical evidence used by Plaintiff in support of the Complaint. (F.R.C.P. 34 (a)). Claimants have a right to test the Cash to verify or discredit the testimony of the K-9 handler under the Federal Rules. Very simple residue tests are available and could have easily been conducted by Claimants designated expert, Jose Rubio. The simple test could have answers important questions such as:

1.   Was there really any drug residue present? What kind of drug was it?

2.   Did the dog make a mistake? Did it smell food or another scent?

3.   What did the dog really smell?

4.   How does the handler know what the dog smelled since no drugs were present?

5.   How many actual bills had residue on them, if any, 1, 5, 23, 99, 204 bills?

6.   Did the dog alert to the container and not the money? Was the money clean, but the container tainted in the luggage compartment as Officer Martinez admits? (Exhibit F)

All of these questions could be answered if Claimants were allowed to physically inspect the evidence. This fundamental right of fairness has been denied Claimants because Plaintiff destroyed the evidence.

This issue is no different than the following examples:

1.   In a case where identity was at issue in a civil case, all parties would have an absolute right to inspect the scientific blood evidence, DNA evidence, photo line-up or finger print evidence. One party would not be allowed to conduct its unilateral DNA test, then destroy the DNA, and then present their evidence to a

jury without any chance of inspection or rebuttal from the opposing side.

The Plaintiff is trying to offer physical evidence to support its position without producing the evidence for inspection. This is a violation of the Federal Rules and should not be permitted.

Additionally, by Officer Martinez own admission, the K-9 "alert" is not reliable to prove that the money was tainted with drugs. Officer Martinez testified to the following:

Q.    (DeLaFuente): But you say he–he will alert to less than 2 grams?

A.    (Martinez): He will have an interest on less than 2 grams, but he don't supposed to alert.

Q.    Okay. So, again, when you searched Omar's luggage, the dog alerted to his personal luggage?

A.    Yes.

Q.    Which would indicate to you that there was 2 grams of cocaine in that luggage?

A.    Or the smell or something. Or like Mr. Fourt said, it could have got contaminated with something. So, who knows? (Exhibit F)

Officer Martinez is the government's designated expert on the issue of the dog sniff and his ultimate conclusion is "*it could have got contaminated with something. So, who knows*? He should know, Harlingen PD should know and the United States Attorney's Office should know. Testimony that the luggage/money was tainted with drugs, <u>which could have been easily verified if the evidence was not destroyed,</u> is wholly unreliable and should be excluded from this trial.

## CONCLUSION

Claimants, pursuant to F.R.C.P. 37, respectfully request the Honorable Court to exclude any evidence offered by Plaintiff which alleges the Cash physical evidence was tainted with illegal narcotic residue as a result of a "dog sniff test".

## STATEMENT OF CONFERENCE

Claimants have conferred with Plaintiff and Plaintiff opposes the production of the

physical evidence because it has been destroyed. (Exhibit E).


Respectfully submitted,

By: _____
Paul L. Fourt, Jr.
Texas Bar Number 00785874
Federal Identification No. 19663
1000 E. Van Buren
Brownsville, TX 78520
Tel. 956-574-0109
Fax 956-574-0227


## CERTIFICATE OF SERVICE

I certify that on July 27, 2006, a true and correct copy of this motion to the United States

was served by personal delivery on the U.S. Attorney's Office by hand.

_____
Paul Fourt