IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. B-04-015 |
| | § | |
| $155,895 UNITED STATES CURRENCY, | § | |
| Defendant. | § | |

<u>UNITED STATES' ANSWERS AND OBJECTIONS
TO OMAR MARTINEZ'S INTERROGATORIES</u>

TO:  Omar Martinez by and through his attorney of record Daniel A. Sanchez, 501 E. Tyler Avenue, Harlingen, Texas 78550.

Pursuant to the Federal Rules of Civil Procedure, the United States of America, on behalf of its agency the Federal Bureau of Investigation, in the above numbered cause, submits it's Objections and Responses to Omar Martinez's First Set of Interrogatories.

## GENERAL OBJECTIONS

The United States asserts the following general objections to Omar Martinez's interrogatories and request for documents:

1. The United States generally objects to all requests for information to the extent they are intended to request, or purport to request, information protected by a claim of privilege, including, attorney/client, work product, deliberative process, investigative, confidentiality privilege, official information, or any other

Exhibit A

The United States objects to this interrogatory for the same reasons set forth in its response to Interrogatory No. 1. The request for tax information of peace officers is irrelevant since it does not lead to the discovery of admissible evidence in the forfeiture proceeding. It also seeks the disclosure of official, privileged, and confidential information, is unduly burdensome, and appears to be asserted for the improper purpose of harassing witnesses.

**INTERROGATORY NO. 7:**

Please specify how, when and where Respondent derived the U.S. Currency made the basis of this suit from the illegal sale, manufacture, distribution, dispensation, or delivery of controlled substances as Plaintiff alleged in Paragraph IV of Plaintiff's Verified Complaint for Forfeiture *In Rem*.

**ANSWER:**

The United States objects to the form of the question. The law is well-established that the United States need not link currency to a particular illicit narcotics transaction, or produce direct proof of a narcotics nexus, to meet its burden of showing by a preponderance of the evidence that the defendant currency is subject to forfeiture because it constitutes drug proceeds. The United States can meet its burden by producing circumstantial evidence which shows there is a connection between the defendant currency in the claimant's possession and the drug trade.

Subject to and without waiving the above objection, the United States is in the process of seeking discovery from Omar Martinez on how, when and where he derived the defendant currency. A combination of facts or circumstances show the defendant currency was used or was intended to be used in exchange for controlled substances; the currency represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of the federal Controlled Substances Act.

The facts or circumstances include, but are not limited, to the following:

On August 4, 2003, officers with the Harlingen Police Department were conducting drug interdiction duties at US 77 Frontage Road and Tyler Avenue in Harlingen, Texas. At around 4:40 p.m., a Adame bus made a scheduled stop at the above location. A Harlingen Police Officer subsequently engaged Martinez, who

was a passenger on the bus, in a consensual conversation concerning where he traveled, the purpose and length of the trip, and so forth. Martinez claimed he traveled from Virginia where he had been working. He stated he stayed in Virginia for three weeks. The officer noticed Martinez displayed nervousness beyond that of the normal passenger. He avoided eye contact, kept putting his hands inside his pockets, and paced back and forth. When asked if he carried large amounts of United States currency, Martinez indicated he had $1800 on his person. He denied carrying more than $2000.

Martinez consented to officers searching his suitcase. Two cell phones were recovered from the suitcase. The bus driver subsequently asked Martinez if a DVD player inside a bag belonged to him and Martinez answered affirmatively and placed the bag next to another bag containing a Karaoke machine. The police officer asked Martinez if the Karaoke machine also belonged to him, and Martinez's hands began to shake and he began to breathe rapidly. He answered affirmatively, explaining he had purchased it for his boy. After confirming the Karaoke player was new, the officer noticed the factory tape on top of the box had been cut. Martinez denied opening the box. Martinez consented to the officer searching inside the box. The officer noticed the Karaoke player was heavier than normal. Upon inspection, the officer saw bundles of United States currency wrapped in plastic through holes located on the back board of the Karaoke machine. When the officer turned to Martinez to ask about the money concealed inside the Karaoke player, Martinez was walking away carrying his suitcase and DVD player. The officer called him back and asked about the money. Martinez was silent for a moment, and then denied knowing anything about the money. Martinez consented to officers opening the Karaoke machine, but stated he preferred that they not do it in front of the bus passengers.

After Martinez and the officers walked to the back of the bus, Martinez admitted more money was concealed inside the DVD player and consented to a search inside the DVD player as well. Officers removed the screws from the backboard of the Karaoke machine and found several vacuum sealed bundles of United States currency inside the machine. When asked who owned the money, Martinez indicated in Spanish that the money was found in his bags, so it belonged to him. When asked about the source of the money, Martinez claimed it came from his work. Officers subsequently recovered more vacuum-sealed bundles of money from the DVD player.

Both the Karaoke machine and DVD player were placed on a sterile area and a

narcotics detection dog trained and certified to detect the odor of controlled substances, positively alerted to the odor of controlled substances on the currency inside the Karaoke machine and the DVD player. The canine further positively alerted to the odor of controlled substances: on the currency that Martinez carried in his pocket (1945.00) and on or inside Martinez's suitcase.

Martinez accompanied the officers to the Harlingen Police Department where the bundles of money were removed from the Karaoke and DVD players and counted. On the way to the Harlingen Police office, Martinez stated he was carrying about $100,000.00 or a little more. He changed his earlier account about the source of the money, stating the money came from a lawsuit that he had won. Officers ultimately recovered seven bundles of currency from inside the Karaoke machine, three bundles from the DVD player, and $1945 from Martinez's person. The denominations, totaling $155,895.00, consisted of:

5 of $1's = $5.00
4 of $5's = $20.00
2 of $10's = $20.00
1000 of $20's = $20,000.00
579 of $50's = $28,950.00
1069 of $100's = $106,900.00
Total = $155,895.00

Officers also discovered the following items on Martinez's person or in his luggage: a receipt for a DVD player dated 8/2/03 for $105.99 from the Sears Store in King of Prussia, Pennsylvania; a receipt from the Motel 6 in King of Prussia, Pennsylvania, dated 7/28/03 to 7/29/03 under the name of Victoriano Anzualdua; a receipt from Best Buy in King of Prussia, Pennsylvania, dated 8/2/03 for the purchase of a cellular phone and case for $381.57.

In Martinez's initial Statement of Right of Interest and Statement of Persons and Entities Known to Have a Financial Interest in this Litigation, Martinez represented he was **the** bona fide owner of the defendant currency and that all persons known to have an interest in this case were identified and filed a response with the Court. He had no knowledge of any parties (other than himself) with a financial interest in this litigation.

Later, after the government moved to strike his Statement of Interest for lack of verification, Martinez filed a First Amended Rule C(6) Verified Statement of

Right of Interest and Statement of Persons and Entities Known to Have a Financial Interest in this Litigation claiming he was **a** bona fide owner of the defendant currency. He also named for the first time additional persons allegedly having a financial interest in this litigation: Esteban Martinez, Jr., Julisa Trevino, and Esteban Martinez Sr.

In Martinez's answers to the United States' interrogatories, he gave yet another account (inconsistent with his prior accounts) as to the source of his possession of defendant currency. He claimed he received $15,000 from Esteban Martinez, Sr. between November and December 2002 for a business purchase; $20,000 from Julisa Trevino in December 2002 for a business purchase; and $76,300 from Esteban Martinez Jr. in July 2003 for a business purchase. Contrary to what he told police officers, Martinez stated in his answer to interrogatories that he carried the defendant currency for the purpose of "obtaining or opening up a business." He concealed the money in the Karaoke and DVD machines for the prevention of theft or robbery. Rather than traveling to Virginia as he told the police, he stated his places of travel from his home in Mercedes, Texas, were to: Houston, Texas; Baltimore, Maryland; Philadelphia, Pennsylvania; Fairton, New Jersey (where he inquired about a business); and lastly King of Prussia, Pennsylvania. He stated he drove from Mercedes to Houston, Texas, where he boarded a plane (paying cash) to Baltimore. He traveled by train to Philadelphia, and from there he does not explain the trip back to Harlingen, Texas, by bus. Although the police officers found on his person a Motel 6 receipt in the name of "Victoriano Anzualda", Martinez claimed in his answer to interrogatories that he did not know such individual.

Investigation revealed that in 2002, authorities arrested the driver of a semi-trailer carrying approximately 1000 pounds of marijuana. Authorities determined Omar Martinez owned the trailer and also obtained information during the investigation that Martinez employed the driver to transport the marijuana load.

In 1998, Martinez was arrested at the Sarita Check Point in Texas for possession of 125 pounds of marijuana. In 1992, Martinez received a felony conviction for possession of marijuana in Florida.

According to joint tax returns for Omar and Mayra Martinez that were provided in Martinez's answers to interrogatories, the Martinez's had an adjusted gross income of below $19,000.00, for 2000, 2002 and 2003 tax years. Martinez did not provide an individual tax return for 2001.

On the day of the seizure, police officers spoke with Martinez's wife, Mayra Martinez. When asked about the large amount of currency Martinez carried, she appeared surprised and stated she knew nothing about the money. She said Martinez was a truck driver and had lost his job about a month earlier and that he went somewhere to look for a job. The amount in their checking account, on the average, was no more than $5000. Mrs. Martinez recalled Martinez had received a sum of money from a 1996 lawsuit involving the death of his mother. She stated Martinez paid off a house and purchased a tractor truck with that money. She acknowledged that Martinez was arrested for possession of marijuana with her brother but explained that the case was dismissed against Martinez since her brother took the blame for the marihuana.

The Harlingen Police officers involved in the questioning of Omar Martinez and the search and seizure of the defendant currency received specialized training concerning the characteristics of drug traffickers and money couriers, and the manner and methods utilized for the delivery, distribution and transportation of controlled substances and money used, acquired, or exchanged in such offenses. The officers believed the totality of the facts and circumstances surrounding the events of August 4, 2003, including Omar Martinez's conduct and behavior, were indicative of Martinez transporting currency used, acquired, or exchanged in violation of the Controlled Substances Act.

Martinez's displayed behavioral characteristics such as nervousness, physical shaking, lack of eye contact, pacing back and forth; Martinez gave false and contradictory statements regarding his knowledge of the money and the amount of money he carried. Martinez gave false, contradictory and implausible statements (including his later accounts in interrogatory responses) regarding his travel plans, where he traveled, the reason for his trip, and the purpose for carrying such a large amount of cash.

Martinez transported $155,895 in cash over 1700 miles (whether traveling from Pennsylvania, Virginia or New Jersey–whichever story you consider) when the cash could have been wired via a bank, a safer and more secure method of making funds available. A person engaging in a legitimate business transaction would wire transfer the money to the far away location, or at least would have reduced the number of bills he/she carried by simply exchanging the smaller bills for larger denominations, thereby reducing the number of bundles and bills being transported. Also, the money was divided into several vacuum-sealed containers which is a common practice by drug traffickers to prevent detection from law

enforcement. Martinez purchased costly equipment (DVD player and Karaoke machine) to use for concealing the currency. A narcotics detection dog trained and certified to detect the odor of narcotics and controlled substances, positively alerted to the odor of narcotics on the defendant currency and Martinez's suitcase.

Martinez's wife (Mayra) contradicted Martinez's statements (whether you consider the statements he made to police or the statements he has subsequently made concerning the source of the money and purpose of his trip). Mayra told police she knew nothing about the money and appeared surprised he was carrying such a large amount of currency. Contrary to Martinez's statements, she reported the money Martinez received from a judicial settlement years earlier was used to pay off a house and truck.

Martinez was unemployed and had no known significant savings or other sources of legitimate income. He has a prior criminal history of narcotics violations, and a large amount of marijuana was seized from a tractor-trailer owned by Martinez.

As the discovery process and investigation continues in this case, the above response may be supplemented.

**INTERROGATORY NO. 8.**

Please identify the exact acts of Respondent upon which Plaintiff bases his allegations in Paragraph IV of Plaintiff's Verified Complaint for Forfeiture *In Rem*, the dates upon which these alleged acts occurred and the locations at which these alleged acts occurred.

**ANSWER:**

The United States objects to the form of the question for the same reason specified in response to Interrogatory No. 7. The United States further objects to the question as ambiguous, over-broad and confusing without further explanation, definition and clarification. The question also requests information that is covered by the deliberative process privilege, attorney work product privilege, and investigatory files privilege.

Subject to the above objections and without waiving same, the response to Interrogatory No. 7 is incorporated herein.