IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| $155,895 UNITED STATES CURRENCY | § | Civil Action No. B-04-015 |
| | § | |
| | § | |
| Defendant. | § | |

United States District Court
Southern District of Texas
FILED
AUG 17 2006
Michael N. Milby, Clerk of Court

## CLAIMANTS' MOTION TO EXCLUDE EXPERT WITNESS PURSUANT TO F.R.E. 702 AND DAUBERT V. MERRELL DOW PHARMS., INC.

Claimants, Esteban Martinez Jr., Esteban Martinez, Sr., and Julissa Trevino ("Claimants") file this Motion to Exclude Expert Witness and would show the court the following:

### I. BACKGROUND

Plaintiff has alleged in its Complaint for Forfeiture that the United States Currency (hereinafter "Cash") was tainted with or somehow covered with an unknown illegal narcotic. Plaintiff further alleges in its response to interrogatory number 7, that because the Cash was tainted with illegal narcotic residue, Omar Martinez was engaged in narcotic trafficking.

The evidence the government uses to *"establish this fact"* is oral testimony from Harlingen Police Officer Ramiro Martinez. The government has designated Officer Martinez as an expert witness under *F.R.E. 702*. Officer Martinez is the K-9 handler who used a dog to "smell" the money. Officer Martinez claims the K-9 might have "alerted to the presence of narcotics on the money", but ultimately, officer Martinez admits that he does not know what the dog smelled.

It is important to note that no narcotics were found on the person, clothes or luggage of Omar Martinez. The Government's entire case rests with the dog handlers "guess" about what the dog "alerted" to with regard to the Cash.

In his deposition, Officer Martinez testified to the following:

Q. (DeLaFuente): But you say he–he will alert to less than 2 grams?

A. (Martinez): He will have an interest on less than 2 grams, but he don't supposed to alert.

Q. Okay. So, again, when you searched Omar's luggage, the dog alerted to his personal luggage?

A. Yes.

Q. Which would indicate to you that there was 2 grams of cocaine in that luggage?

A. **Or the smell or something. Or like Mr. Fourt said, it could have got contaminated with something. So, who knows? (Exhibit A)**

## ARGUMENTS AND AUTHORITY

The undersigned, in the interest of judicial economy, will not include a "law review" type of case analysis of the Court's "Gatekeeper" function since this is not a case of first impression and the Court is already very well versed in its role. The basis of Claimant's motion is this:

**Plaintiff's "expert witness testimony" is not reliable to assist the trier of fact.**

Under *F.R.E. 702*, an experts opinion must be sufficiently reliable. The Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct 2786 (1993) outlined four major factors the court should consider when looking at the reliability of an experts testimony. (For the reasons stated above regarding the Court's Gatekeeper role, the undersigned will not include a canned brief of *Daubert,* but will promptly supplement with case briefs if the Court

requests). However, the problem with *Daubert*, as it relates to this case, is that Daubert really contemplates a four pronged test for SCIENTIFIC or MEDICAL type experts. The Supreme Court resolved this problem in *Kumho Tire Co. V. Carmichael*, 526 U.S. 137 (1999), when it disposed once and for all the notion that Daubert's gatekeeping principles might extend only to scientific testimony. The Court, citing *F.R.E. 702* that requires expert testimony embody scientific, technical, or other specialized knowledge, held that the trial court's ruling on admissibility must evaluate the reliability of all expert testimony, whether scientific or not. *Kumho*, 526 U.S. 137 (1999). The Court acknowledged that Daubert was a "flexible" test that could be applied to non-scientific experts along with other factors the trial court may consider.

One factor the trial court may consider is whether the expert's testimony is based on sufficient facts or data. *F.R.E. 702*. This requirement is quantitative and imposes a minimum level of facts or data an expert must have to support his opinion. *Rudd v. General Motors Corp.*, F.Supp.2d 1330, 1339 (M.D. Ala. 2001). As applied to this case, it is clear that Officer Martinez did not have any facts or data to support the governments opinion that the money was tainted with narcotics. Martinez even admitted the following:

> Q. Okay. So, again, when you searched Omar's luggage, the dog alerted to his personal luggage?
>
> A. Yes.
>
> Q. Which would indicate to you that there was 2 grams of cocaine in that luggage?
>
> A. **Or the smell or something. Or like Mr. Fourt said, it could have got contaminated with something. So, who knows? (Exhibit A)**

Expert Martinez can not even say whether or not the "test Sample" the dog smelled was contaminated. His ultimate opinion is "who knows" what the dog smelled.

Another factor the trial court may consider is whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *General Elec. Co. V. Joiner*, 522 U.S. 136,146 (1997). The court may conclude that there is simply too great an analytical gap between the data and the opinion offered. In this case, we have a human being offering an opinion on what, if anything, a dog smelled. It is important to remember that no narcotics of any kind were found on or near the seized money. The dog did not 'hit" on drugs. Did the dog smell the luggage or the money? The expert can not say because he did not remove the money from the bag. And as pointed out above, the expert does not know whether or not the sample was contaminated. It is impossible for this expert to offer a reliable conclusion based on the data or test using a K-9 smell test, because in his own words, "who knows". (Exhibit A)

Another factor the trial court may consider is whether the expert has accounted for alternative explanations. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). The fact the expert did not separate the currency from the travel bag renders the test worthless as to whether or not the currency was tainted with drug residue. The expert by his own admission says he did not account for whether the sample was contaminated under the bus in the luggage cargo hold. The expert does not even know if his base sample is valid or contaminated. There are obviously more explanations for the alleged smells and the expert failed to account for any of them except that the "money was tainted with drugs".

## CONCLUSION

Claimants, pursuant to F.R.E. 702, respectfully request the Honorable Court to exclude any evidence offered by Plaintiff's expert K-9 officer which alleges the Cash physical evidence was tainted with illegal narcotic residue as a result of a "dog sniff test" because that testimony does not meet the reliability standards set by the Supreme Court in *Daubert, Kumho* and progeny.

STATEMENT OF CONFERENCE

Claimants have conferred with Plaintiff and Plaintiff opposes this motion.

Respectfully submitted,

By: _____
Paul L. Fourt, Jr.
Texas Bar Number 00785874
Federal Identification No. 19663
1000 E. Van Buren
Brownsville, TX 78520
Tel. 956-574-0109
Fax 956-574-0227

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2006, a true and correct copy of this motion to the United States was served by personal delivery on the U.S. Attorney's Office by hand.

_____
Paul Fourt