UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 9 2006

Michael N. Milby
Clerk of Court

| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-04-015 |
| v. | § | |
| | § | |
| | § | |
| $155,895 UNITED STATES CURRENCY | § | |
| Defendant. | | |

## UNITED STATES' PRETRIAL ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiff United States of America, by and through the United States Attorney for the Southern District of Texas, and files this Pretrial Order.

I.

### APPEARANCE OF COUNSEL

Plaintiff is represented by Donald J. DeGabrielle, Jr. United States Attorney for the Southern District of Texas, and Katherine Haden, Assistant United States Attorney, Texas Bar Number 08677500, P.O. Box 61129, Houston, Texas 77208, Telephone: (713) 567-9365, Facsimile: (713) 718-3404.

Omar Martinez is represented by Oscar De La Fuente, Jr., Texas Bar No. 05645575, Rio Grande Law Center, 501 E. Tyler, Harlingen, Texas 78550, Telephone: (956) 425-5297, Facsimile: (956) 425-1844.

Esteban Martinez Sr., Esteban Martinez Jr. and Julissa Trevino are represented by Paul Fourt, Jr., Texas Bar No. 00785874, 1000 E. Van Buren, Brownsville, Texas 78550, Telephone: (965) 574-0109, Facsimile: (956) 574-0227.

II.

## STATEMENT OF THE CASE

A. **Plaintiff's Statement of Case**

The United States asserts that a combination of facts prove, by a preponderance of the evidence, that the Defendant Currency ($155,895) is subject to forfeiture because it was furnished in exchange for a controlled substance, is traceable to such an exchange, or was used to facilitate a violation of the Controlled Substances Act. The United States seized the Defendant Currency on August 4, 2003, from Claimant Omar Martinez, who carried the currency concealed and packaged in vacuum-sealed plastic bags inside a Karaoke machine and DVD player on a bus from a northern region of the United States to Harlingen, Texas.

B. **Claimants' Statement of Case**

In preparing for the Joint Pretrial Order (JPO) in May 2006, the undersigned requested the Claimants' attorneys, Mr. DeLaFuente and Mr. Fourt, to submit their

part of the required information in the JPO. They both faxed a two-page letter on May 10, 2006, to the undersigned attorney containing submissions they wished to be included in the JPO (attachment F and G).

Beginning on August 17, 2006, the undersigned requested the attorneys for both sides to supplement and update their previous submissions to be included in the JPO. After the undersigned received no new submissions or input for the JPO, on August 25, 2006, she emailed a copy of the final draft of the proposed JPO to the Claimants' attorneys and requested that they review the JPO and make any changes or new submissions that they wanted included in the JPO by August 28, 2006, so the undersigned could file the JPO. If they did not wish to make any changes or new submissions, the undersigned requested that they sign the signature page for filing. The undersigned also faxed a letter to both attorneys notifying them that she had emailed the final draft of the JPO with the same instructions. The attorneys have provided no new input, and did not sign the signature page in the proposed JPO. Consequently, the United States incorporates, herein, the only submissions Claimants provided on May 10, 2006, and files this Pretrial Order without the signature of Claimants' attorneys.

Claimant Omar Martinez states that the Defendant Currency was derived from a legal settlement and belongs to him and the other Claimants. Claimants

Esteban Martinez Sr., Esteban Martinez Jr., and Julissa Trevino state that they loaned/invested money with Omar Martinez for the purpose of starting a family business. They claim that the money seized by the government is not drug proceeds, nor was it intended to be used in a drug transaction.

III.

JURISDICTION AND VENUE

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. § 1395.

IV.

MOTIONS

A. **Plaintiff's Pending Motions**

Plaintiff's Motion to Exclude Expert Testimony by Joe Rubio Jr.; or alternatively, Request for Preliminary Determination under Fed.R.Evid. 104

B. **Claimants' Motions**

Claimants' Motion to Exclude Expert Witness Pursuant to Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*

Claimants' Motion for Order Compelling Discovery and/or Claimants' Motion to Exclude Evidence Pursuant to F.R.C.P. 37.

V.

## CONTENTIONS OF THE PARTIES

A. **Plaintiff's Contentions**

The Plaintiff filed a trial brief setting forth, in more detail, its contentions of the facts and applicable law in this case. The Plaintiff is required to prove by a preponderance of the evidence that the Defendant Currency was furnished or intended to be furnished in exchange for a controlled substance, is traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act. The United States may use circumstantial evidence to establish its burden of proof. It is not necessary for the United States to trace the property to a particular drug transaction. In making the determination, the evidence is to be viewed as a totality, not minutely parced.

Plaintiff would show the Court that cash is almost always used to pay for illegal controlled substances because of its readily identifiable value and because of the difficulty in tracing cash transactions. Large quantities of cash are needed and used to purchase illegal drugs in bulk quantities. As a result, large quantities of United States currency are a "tool of the trade" of illegal drug trafficking. The presence of a large quantity of United States currency is strong evidence that the money was furnished or intended to be furnished in return for drugs.

Legal transactions involving large sums of money are very seldom conducted with cash because of the effort involved in securing large quantities of cash from legal sources, the effort involved in transporting and counting large quantities of cash, and the greater risk of financial loss by robbery or theft in cash transactions. Legitimate businesses usually wire cash between bank accounts or they convert large amounts of cash into cashier's checks. Those who deal in unlawful drug proceeds want to avoid wiring large sums of money or obtaining a cashier's check because it generates a currency transaction report. Additionally, the transportation of a large volume of smaller denominations in $20s and $50s is indicative of drug trafficking.

Moreover, the method of travel can also link currency to drug-trafficking activity. The purchase of a one-way airplane ticket with cash shortly before traveling is a common method used by drug traffickers or drug couriers.

Law enforcement agencies use narcotic detector dogs to detect the odor of controlled substances. These dogs are trained to react to the odor of controlled substances on currency, packing materials, and other items, and are reliable. Such dogs are recognized as being highly effective both by law enforcement and by persons engaged in illegal drug trafficking.

Prior to being smuggled cross country, both drugs and drug proceeds are

commonly wrapped in a manner to try and keep the odor of drugs they carry from escaping. One common method is packaging or storing drugs or currency in vaccum-sealed plastic bags. This is done to try and avoid detection by "drug sniffing" dogs which are used by law enforcement. Large quantities of illegal drugs are smuggled north into the United States from Mexico while the United States currency to pay for those drugs is smuggled in the opposite direction. Both the smuggling of drugs north and the smuggling of drug proceeds south to pay for those drugs are common features of illegal drug trafficking operations.

One of the most compelling types of evidence to establish a link between currency and an unlawful controlled substance violation is the claimant's prior drug-related activities, arrests or convictions. Additionally, a claimant's behavioral characteristics, ownership disclaimer, evasive, contradictory or implausible statements regarding details of travel, reasons for carrying a large amount of money, and the source of the money are persuasive evidence that the currency is drug proceeds.

On August 4, 2003, Harlingen police officers performed a routine bus interdiction at US 77 Frontage Road and Tyler Avenue in Harlingen, Texas. Harlingen Police Officer Ramiro Martinez encountered Claimant Omar Martinez as he collected baggage (one suitcase and two plastic bags with boxes inside).

They engaged in a routine and consensual conversation regarding where Omar had traveled, the purpose and length of the trip, and so forth. Omar claimed he traveled from Virginia where he had been working. He reportedly stayed there for three weeks. Officer Martinez noticed Omar was more nervous than the ordinary passenger. Omar avoided eye contact, kept putting his hands inside his pockets, and paced back and forth. Office Martinez asked if Omar carried any weapons or drugs. Omar immediately answered "no" and invited Officer Martinez to search him or his bags. Officer Martinez next asked if Omar carried a large amount of currency. Omar grabbed a bulge in his pocket and stated he had about $1800, but denied carrying more than $2000.

Officer Martinez confirmed that Omar consented to a search of his suitcase. He looked inside the suitcase, finding two cell phones and a receipt for the recent purchase of a cell phone. Omar walked away during the search and when he returned, the bus driver asked if a DVD player inside a shopping bag belonged to him. Omar answered affirmatively and placed it next to another shopping bag containing a Karaoke machine. Officer Martinez asked Omar if the Karaoke machine also belonged to him, at which time, Omar's hands began to shake and he began to breathe rapidly. Omar answered, yes, that he had purchased it for his son. Although Officer Martinez noticed that the factory tape on top of the store box

8

had been cut, Omar stated that he had never opened the box. Omar gave Officer Martinez permission to open the box and inspect the Karaoke machine.

When Officer Martinez removed the Karaoke player from the box, he noticed it was heavier than expected. On further inspection he saw, in plain view through holes on the back board of the Karaoke machine, bundles of United States currency. Meanwhile, Omar was walking away carrying his suitcase and the other shopping bag. Officer Martinez called Omar back and asked him about the money. Omar was silent for a moment, and then claimed he knew nothing about the money.

Omar permitted Harlingen police officers to open the back of the Karaoke player, but requested they do it outside the view of other bus passengers. He also acknowledged that there was more money hidden inside the DVD player and gave the officers permission to open the frame of the DVD player as well. Officers ultimately discovered several bundles of United States currency, packaged in clear plastic vacuum-sealed bags, inside both the Karaoke machine and DVD player. The currency was packaged the same way that drug traffickers package their narcotics to prevent detection from law enforcement. The officers reassembled the two items and placed them back in their boxes without removing the currency.

Officer Martinez spoke with Omar's wife, Mayra Martinez, who had arrived

to pick up Omar. Mayra stated she did not know where Omar had traveled and that "he just told me to pick him up here." When told about the currency, Mayra appeared surprised. She stated that she did not know Omar carried a large amount of cash, and added that he had just lost his job a month earlier and went somewhere to look for a job.

Officer Martinez returned to Omar and asked whether the money belonged to him. Omar answered in Spanish that the money was found in his bags, so it belonged to him. Omar stated that he got the money from work. Officer Martinez asked how much money Omar was carrying and Omar responded "let's count it." Officer Martinez told Omar that he was not under arrest and was free to go, but that the officers needed to further investigate the money. Officer Martinez invited Omar to come to the police office if he wished.

Officer Martinez transported the evidence, while Omar rode in an unmarked car with Harlingen Police Officer Jose Garcia and Investigator Leo Silva to the HPD, Special Investigations Unit (SIU). During the drive, Omar disclosed that he was carrying about $100,000.00, or a little more. He changed his earlier account about the source of the money, stating the money came from a lawsuit that he had won. He again stated he had traveled from Virginia.

At the SIU, Investigator Silva began completing a personal history sheet on

Omar. When Omar pulled out identification from his wallet, Investigator Silva noticed that the wallet contained a large amount of cash. He subsequently recovered $1945 from Omar's wallet, and the following: (1) a $105.99 receipt for the purchase of a DVD player dated 8/2/03 from Sears Store in King of Prussia, Pennsylvania; (2) a receipt from the Motel 6 in King of Prussia, dated 7/28/03 to 7/29/03 under the name of Victoriano Anzualda with a Florida driver's license number; and (3) a hand-written note with the name Frank Rouco and two other names, a Philadelphia address and phone numbers, and directions to a warehouse.

After Officer Martinez arrived at the SIU, he utilized his dog, Kai, to conduct a dog sniff of the recovered items. Kai was trained and certified to detect the odor of cocaine, marijuana, heroin and methamphetamine. Kai alerted to the odor of a controlled substance on or inside the boxes containing the Karaoke machine and DVD player, as well as, the suitcase. Kai also subsequently alerted to the odor of a controlled substance on the $1945.00 currency recovered from Omar.

Officers Martinez and Garcia spoke with Mayra Martinez at the SIU. She disclosed that Omar had recovered about $129,000 from a wrongful death lawsuit several years earlier. She reported that Omar paid off a house and purchased a tractor-trailer with the money he received. She reported their average savings

account balance was $5000 and that Omar was a truck driver who had stopped working a month earlier. She stated she had quit working after the birth of their baby. Officer Garcia asked Mayra if she knew about the $100,000 or more that Omar reportedly carried or where he got it from. Mayra maintained that she knew nothing about the money.

Officer Martinez learned from El Paso Intelligence Center "EPIC" records that on 4/29/98, Omar was arrested at the Sarita checkpoint for possession of 125 pounds of marijuana. The Drug Enforcement Administration (DEA) also had an open investigation of Omar involving the seizure of 1000 pounds of marijuana from a tractor-trailer he owned.

Officers recovered, counted, and seized seven bundles of currency from the Karaoke machine, three bundles from the DVD player, and $1945 from Omar's person. The denominations, totaling $155,895.00, consisted of:

5 of $1's = $5.00
4 of $5's = $20.00
2 of $10's = $20.00
1000 of $20's = $20,000.00
579 of $50's = $28,950.00
1069 of $100's = $106,900.00
Total = $155,895.00

The officers believed that the above facts and circumstances established probable cause to believe that the Defendant Currency was used, acquired, or exchanged in

violation of the Controlled Substances Act.

Omar Martinez subsequently provided inconsistent statements in his pleadings filed with the Court regarding his and the other Claimants' ownership interest in the Defendant Currency. He also provided a sworn statement in his response to interrogatories that was inconsistent with his earlier statements to police, regarding the source of the Defendant Currency, the purpose of his trip, and where he traveled. The other claimants have also provided implausible, evasive or misleading statements concerning their banking information and the source of the Defendant Currency. Moreover, Omar Martinez stated in interrogatories and during his deposition that he did not know either Victoriano Anzualda or Frank Rouco, although he carried a Motel 6 receipt and a handwritten note bearing those names.

Further, Omar Martinez is connected to prior drug-related activities. Omar was arrested and convicted in 1992 for possession of marijuana after he and his brother, Martin Martinez, delivered marijuana to an undercover police officer. He was arrested in 1998 with his brother-in-law, Edgar Galvan, for transporting 125 pounds of marijuana in a tractor-trailer while purportedly working for Valley Trucking. In 2002, a year before the instant seizure, Omar's tractor-trailer was seized in Atlanta for transporting 910 pounds of marijuana. Omar telephonically

gave instructions to the driver of his tractor-trailer, Ricardo Guajardo, as to when, how and who to contact once he arrived in Atlanta. Records show that Omar and individuals arrested in Atlanta telephonically communicated as well.

B. **Claimants' Contentions**

Claimant Omar Martinez states that the amount of the currency seized was $177,600, and that the currency belongs to him and the other Claimants. He claims they derived the currency from a legal settlement. Claimants Esteban Martinez Sr., Esteban Martinez Jr., and Julissa Trevino state that they loaned/invested money with Omar Martinez for the purpose of starting a family business. They claim that the money seized by the government is not drug proceeds, nor was it intended to be used in a drug transaction.

VI.

AGREED FACTS

Omar Martinez agrees that the Defendant Currency was seized on August 4, 2003 from him in Harlingen, Texas.

The United States agree that the Claimants each received approximately $129,000 from a legal settlement in August 2000.

VII.

CONTESTED ISSUES OF FACT

Claimant Omar Martinez contests all other facts.

14

Claimants Julissa Trevino, Esteban Martinez Sr., and Esteban Martinez Jr. contest allegations that they are involved in the drug trade in any way; they gave money to Omar to buy drugs; they did not give money to Omar at all; the money seized was tainted with drugs; the amount of money seized is the same amount subject to this suit.

VIII.

AGREED PROPOSITIONS OF LAW

Claimant Omar Martinez does not agree to any propositions of law.

Claimants Julissa Trevino, Esteban Martinez Sr. and Esteban Jr. state that any agreed propositions of law will be addressed in evidentiary trial motions.

IX.

IDENTIFIED CONTESTED PROPOSITIONS OF LAW

Omar Martinez states that all legal issues are contested except as to jurisdiction and venue.

Claimants Julissa Trevino, Esteban Martinez Sr. and Esteban Martinez Jr. state that any contested propositions of law will be addressed in their evidentiary trial motions.

X.

EXHIBIT LISTS

Plaintiff's Exhibit List: See Attachment A

Claimants' Exhibit List: None provided

## XI.

## WITNESS LISTS

Plaintiff's Witness List: See Attachment B

Claimants' Witness List: No formal witness list has been provided.

In the May 10, 2006, letters the witnesses listed for Claimant Omar Martinez were: Omar Martinez, Jose Rubio, Jr. and Mike Garcia; and the witnesses listed for Claimants Julissa Trevino, Esteban Martinez Sr. and Esteban Martinez Jr. were: the Claimants, Mike Garcia and Joe Rubio.

## XII.

## SETTLEMENT

Pursuant to Rule 12 of Appendix B of the Local Rules, the Plaintiff states: "all settlement efforts have been exhausted, that the case cannot be settled, and that it will have to be tried."

## XIII.

## TRIAL

Plaintiff expects the trial will take approximately four days.

## XIV.

## OTHER ATTACHMENTS

## VOIR DIRE QUESTIONS

Plaintiff's Proposed Voir Dire Questions: *See* Attachment C

Omar Martinez's Proposed Voir Dire Questions: *See* Attachment E

Claimants Esteban Martinez Sr., Esteban Martinez Jr., and Julissa Trevino have filed no proposed voir dire questions.

## JURY INSTRUCTIONS

Plaintiff's Proposed Jury Instructions: *See* Attachment D

Claimants' Proposed Jury Instructions: None provided

## CLAIMANTS' LETTER SUBMISSION FOR JPO

Claimants' May 10, 2006, letter submission for Joint Pretrial Order: *See* attachment F and G

Respectfully submitted,
DONALD J. DeGABRIELLE, JR.
United States Attorney

_____
KATHERINE L. HADEN
Texas Bar No. 08677500
Assistant U.S. Attorney
Attorney-In-Charge
910 Travis, Suite 1500
P.O. Box 61129
Houston, Texas 77208
Phone: 713-567-9365
Facsimile: 713-718-3300

## CERTIFICATE OF SERVICE

I, Katherine L. Haden, Assistant United States Attorney, do hereby certify that a true and correct copy of the above and foregoing has been served on counsel of record via Certified Mail, Return Receipt Requested, on August 28, 2006, addressed to:

Attorneys for Claimants

Mr. Oscar De La Fuente, Jr.
Rio Grande Law Center
501 E. Tyler
Harlingen, Texas 78550
Telephone: (956) 425-5297
Facsimile: (956) 425-1844

Mr. Paul Fourt
1000 E. Van Buren
Brownsville, Texas 78520
Telephone: (965) 574-0109
Facsimile: (956) 574-0227

_____
Katherine L. Haden
Assistant United States Attorney

## ATTACHMENTS

## TABLE OF CONTENTS

| | |
|---|---|
| Attachment A | Plaintiff's Exhibit List |
| Attachment B | Plaintiff's Witness List |
| Attachment C | Plaintiff's Proposed Voir Dire Questions |
| Attachment D | Plaintiff's Proposed Jury Instructions |
| Attachment E | Claimant Oscar De La Fuente's Proposed Voir Dire Questions |
| Attachment F | Claimant Oscar De La Fuente's May 10, 2006 Letter Submission for Joint Pretrial Order |
| Attachment G | Claimant Paul Fourt's May 10, 2006 Letter Submission for Joint Pretrial Order |